IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRIAN THIEME, on behalf of himself and all others similarly situated, | § § § § | |
| Plaintiff, | § § § | |
| v. | § § § | Civil Action No. 16-cv-__209-M__ |
| CHESAPEAKE ENERGY CORP., CHESAPEAKE EXPLORATION, L.L.C., as successor by merger to CHESAPEAKE EXPLORATION, L.P., SANDRIDGE ENERGY CORP., TOM L. WARD, AND JOHN DOES 1–50. | § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Brian Thieme, by his undersigned attorneys, files this original class action complaint, both individually and on behalf of a class of all those similarly situated, for treble damages under the antitrust laws of the United States.

## NATURE OF THE ACTION

1.     This action arises out of a conspiracy to rig bids and depress the market for purchases of oil and natural gas leasehold interests and properties containing producing oil and natural gas wells, in violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3. The conspiracy commenced on or around December 27, 2007, and continued until at least March 31, 2012 (the "Class Period"). The defendants conduct resulted in a criminal indictment against Aubrey K. McClendon, a former executive of Defendant Chesapeake Energy Corp., for violations of Section

1 of the Sherman Act. *See United States v. Aubrey K. McClendon*, No. CR-16-043, (W.D. Okla. March 1, 2016).[1]

## JURISDICTION AND VENUE

2.      This complaint is filed under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, equitable relief, costs of suit, and reasonable attorneys' fees for violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3. The Court has original federal question jurisdiction over the Sherman Act claim asserted in this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

3.      Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d) because the defendants reside, transact business, are found within this District, and/or have agents within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

4.      This Court has personal jurisdiction over Defendants under 15 U.S.C. § 22 and because, *inter alia,* each: a) transacted business in this District; b) purchased leasehold interests and producing properties in this District; c) have substantial aggregate contacts with this District; and d) engaged in an illegal price-fixing, bid-rigging and customer and market allocation conspiracy that was directed at, and had the intended effect of, causing injury to, persons and entities residing in, located in, or doing business in this District.

## PLAINTIFF

5.      Plaintiff Brian Thieme is a citizen and resident of Colorado.  Plaintiff Thieme owns mineral interests in Alfalfa County, Oklahoma.  In 2011, he entered into an oil and gas lease with Defendant Chesapeake (specifically, on information and belief, Chesapeake Exploration) in which

---

[1] On March 2, 2016, Aubrey McClendon was killed in a car accident in Oklahoma City, Oklahoma.

Chesapeake purchased a leasehold interest in his mineral estate.  As part of the consideration for entering into such lease, Chesapeake paid Plaintiff Thieme a lease bonus.

## DEFENDANTS[2]

6.      Defendant Chesapeake Energy Corp. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma at 6100 N. Western Avenue, Oklahoma City, Oklahoma 73118-1044.

7.      Chesapeake Exploration, L.L.C. is a successor by merger to Chesapeake Exploration, L.P. Chesapeake Exploration L.L.C. is a limited liability company organized under Oklahoma law. Chesapeake Exploration, L.L.C. is made up of three members, Chesapeake Operating, L.L.C. (discussed above), Chesapeake E&P Holding Corporation, and Chesapeake Appalachia, L.L.C. Chesapeake E&P Holding Corp. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Chesapeake Appalachia, L.L.C. is a limited liability company with Chesapeake Energy Corporation as its sole member. Chesapeake Energy Corporation is a corporation organized under Oklahoma law with its principal place of business in Oklahoma.

8.      Defendant SandRidge Energy Corp. is a corporation existing and operating under the laws of the State of Delaware with its principal place of business at 123 Robert S. Kerr Avenue, Oklahoma City, Oklahoma 73102.

9.      Defendant Tom L. Ward is former CEO of Defendant SandRidge Energy.

10.     Defendants John Doe Nos. 1–50 are other entities or persons whose identities are currently unknown to Plaintiff. John Doe Nos. 1–50 are alleged to have participated in the bid rigging and unlawful restraint of trade, and described herein.

---

[2] Unless otherwise noted, the Complaint refers to Chesapeake Energy Corp. and Chesapeake Exploration, LLC, collectively as "Chesapeake."

## AGENTS

11.     The acts Defendants have allegedly committed were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs. Such agents include the landmen or "lease hounds" that facilitate the purchase of the leasehold interests and producing properties.

## INTERSTATE TRADE AND COMMERCE

12.     Throughout the Class Period, Defendants' and their conspirators' conduct with respect to the purchases of leasehold interests and producing properties that are the subject of this Complaint were within the continuous and uninterrupted flow of, and substantially affected, interstate trade and commerce, which included:

a)   Entering into and executing transactions for the purchase of leasehold interests and producing properties that include purchasers and sellers from different states;

b)   Transferring or causing the transfer of money or payments across state lines in connection with purchases of leasehold interests and producing properties; and

c)   Selling oil, natural gas, and natural gas liquids in interstate commerce.

## FACTUAL ALLEGATIONS

### A.   STRUCTURE, CONDUCT, AND PERFORMANCE OF THE MARKET FOR LEASEHOLD INTERESTS AND PRODUCING PROPERTIES

13.     A leasehold interest in an oil and gas lease generally grants the lessee the right to develop the mineral interest to explore for and extract oil, natural gas, and natural gas liquids for a certain length of time.  The typical oil and natural gas lease spans three to five years.  However, the lease is considered "held by production" and continues indefinitely if the lessee extracts "production in paying quantities"; that is, the lessee produces quantities sufficient to yield a return, however small, in excess of "lifting expenses," even though well drilling and completion costs might never be repaid. The lease is held by production so long as the lessee maintains production in paying quantities.

Accordingly, the impact of Defendants' combination and conspiracy affects the royalty paid, potentially, for generations.

14.     In the oil and gas industry, exploration and production companies like Defendants Chesapeake and SandRidge Energy frequently compete to purchase leasehold interests.   Such competition increases the prices of these leasehold interests, resulting in more money for parties like Plaintiff Thieme.

15.     Exploration and production companies also compete to purchase interests in properties that are already producing in paying quantities. "Producing properties" are tracts of land with existing wells that are actively producing oil, natural gas, or natural gas liquids.   The current lessee of the interest may sell to an exploration and production company like Defendants Chesapeake and SandRidge Energy.   This transaction typically includes the underlying leasehold estate and the drilling infrastructure.

16.     In the present case, Defendants Chesapeake and SandRidge Energy were engaged in the business of oil, natural gas, and/or natural gas liquid production during the Class Period.   They were actual and potential competitors for the acquisition of the types of leasehold interests and producing properties described above, many of which are located in Oklahoma, Texas, Colorado, and Kansas and subject to the combination and conspiracy alleged in this Complaint.   The leasehold interests in question comprise a geological formation referred to as the "Anadarko Basin Region."

17.     The Anadarko Basin Region, as that term is defined in this Complaint, includes the Anadarko basin, the Anadarko Woodford Shale Play, the South Oklahoma Woodford Shale Play, and the Mississippian Lime Play. The Anadarko Basin Region is one of the deepest and most prolific hydrocarbon producing fields in the continental United States. The basin reaches into parts of northwest Oklahoma, north Texas, southeast Colorado, and Kansas.[3]

---

[3] The Anadarko Basin Region is located within the following counties:

**B.    THE DEPARTMENT OF JUSTICE'S INDICTMENT OF AUBREY MCCLENDON**

18.    On March 1, 2016, a grand jury indicted McClendon and other unnamed co-conspirators on the charge of engaging in an unreasonable restraint of commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[4] The basis of the indictment was the combination and conspiracy that Mr. McClendon, the other defendants named herein (including Chesapeake, SandRidge Energy, and Tom Ward), and unknown co-conspirators engaged in to suppress and eliminate competition by rigging bids for certain leasehold interests and producing properties.

19.    The purpose of the combination and conspiracy was to suppress the prices that Defendants Chesapeake and SandRidge Energy paid to acquire certain leasehold interests and producing properties in the Colorado, Kansas, Oklahoma, and Texas by eliminating competition between Chesapeake and SandRidge Energy for the purchase of such leasehold interests and producing properties.

---

➢ Oklahoma: Alfalfa, Atoka, Beckham, Blaine, Caddo, Canadian, Carter, Coal, Cotton, Creek, Dewey, Ellis, Garfield, Garvin, Grady, Grant, Greer, Harmon, Harper, Hughes, Jackson, Jefferson, Kay, Kingfisher, Kiowa, Lincoln, Logan, Major, McClain, McIntosh, Noble, Osage, Pawnee, Payne, Pittsburg, Roger Mills, Stephens, Tulsa, Washington, Washita, Woods, Woodward.

➢ Texas: Sherman, Hansford, Ochiltree, Lipscomb, Moore, Hutchinson, Roberts, Hemphill, Potter, Carson, Gray, Wheeler, Donley, and Collingsworth.

➢ Colorado: Las Animas and Baca.

➢ Kansas: Barber, Butler, Clark, Coffey, Comanche, Cowley, Dickinson, Edwards, Elk, Finney, Ford, Gove, Grant, Gray, Greenwood, Harper, Harvey, Haskell, Hodgeman, Kearny, Kingman, Kiowa, Lane, Logan, Lyon, Marion, McPherson, Meade, Montgomery, Ness, Pawnee, Pratt, Reno, Rice, Rush, Saline, Scott, Sedgwick, Seward, Sheridan, Sherman, Stafford, Stevens, Sumner, Thomas, Trego, Wallace, Wilson, Wichita, and Woodson.

[4] A copy of the indictment, captioned *United States v. Aubrey K. McClendon*, No. CR-16-043, (W.D. Okla. March 1, 2016), is attached as Exhibit 1.

20.     The indictment detailed the manner in which Defendants carried out the bid rigging combination and conspiracy. According to the indictment, Defendants accomplished the combination and conspiracy by:

   a)   engaging in communications concerning certain leasehold interests and producing properties, and the prices therefor, in the Western District of Oklahoma;

   b)   agreeing during those communications that [Defendants Chesapeake and SandRidge Energy] would not compete against one another for certain leasehold interests and producing properties in the Western District of Oklahoma either by one company not submitting offers or bids to certain owners of leasehold interests and producing properties, or by one company withdrawing previously submitted offers or bids to certain owners of leasehold interests and producing properties in exchange for a share or a subset of the leasehold interests and/or producing properties purchased by the other company at the acquisition cost;

   c)   submitting offers or bids, withholding offers or bids, or acting to withdraw previously submitted offers or bids, to owners of certain leasehold interests and producing properties in the Western District of Oklahoma in accordance with the agreement reached;

   d)   acquiring certain leasehold interests and producing properties in the Western District of Oklahoma at collusive and noncompetitive prices and then providing the non-acquiring co-conspirator a share or a subset of the leasehold interests and/or producing properties at the acquiring co-conspirator's cost; and

   e)   employing measures to keep their conduct secret, including, but not limited to, agreeing not to reveal their anticompetitive agreement to the owners of the leasehold interests and producing properties at issue in this Indictment, and instructing their subordinates to do the same.

21.     The above-described combination and conspiracy artificially depressed the prices of the leasehold interests and producing properties that Defendants Chesapeake and SandRidge Energy purchased. The combination and conspiracy affected not only the interests and properties that Defendants Chesapeake and SandRidge Energy purchased, but also the overall market. Thus, sellers of leasehold interests and producing properties to entities other than Defendants Chesapeake and SandRidge Energy received less value than they would have in a competitive market, despite the fact that they did not sell to Chesapeake and SandRidge Energy.

22.     Mr. McClendon derived considerable personal benefits from the combination and conspiracy through Chesapeake "Founder Well Participation Program." ("FWPP").  The FWPP permitted Mr. McClendon and Defendant Tom Ward to continue participating as working interest owners in new oil and natural gas wells drilled by the Chesapeake. Mr. McClendon was thus permitted to participate in all of the wells spudded by or on behalf of the Chesapeake during each calendar year. Defendant Tom Ward's participation rights in the FWPP terminated on August 10, 2006, the date he resigned from Chesapeake. Defendant Ward's participation in the program therefore predates the Class Period.

23.     Defendant Ward, however, did participate in a similar program at Sandridge Energy, which was called the "SandRidge Executive Well Participation Program," during the Class Period. Mr. Ward was able to participate in all of the wells spudded by or on behalf of Sandridge Energy throughout the Class Period.  On information and belief, Mr. Ward did in fact participate in such wells. Thus, Defendant Ward, like Mr. McClendon, obtained personal benefits from the combination and conspiracy.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following sub-classes (collectively, the "Class"):

**Direct Seller Class:**

All persons and entities who 1) sold to Defendants[5] leasehold or working interests on lands within the Anadarko Basin Region with no producing oil and gas of wells or 2) who owned tracts of land within the Anadarko Basin Region with producing oil and gas wells where Defendants purchased such land's leasehold and working interests, at any time between December 27, 2007 and March 31, 2012. Excluded from the class are Defendants,

---

[5] "Defendants" as used in the class definition include any predecessor, subsidiary, agents (such as landmen), or affiliate of Defendants.

any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

**Diminution in Sales Price Class:**

All persons and entities who 1) sold to parties other than Defendants[6] leasehold or working interests on lands within the Anadarko Basin Region with no producing oil and gas wells or 2) who owned tracts of land within the Anadarko Basin Region with producing oil and gas wells where such leasehold or working interests were sold to a party other than Defendants, at any time between December 27, 2007 and March 31, 2012. Excluded from the class are Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

25.    Plaintiff does not know the exact number of members of the Class because such information is in the exclusive control of Defendants. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds or thousands and are sufficiently numerous and geographically dispersed so that joinder of all Class members is impracticable.

26.    There are questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited to:

    a.    Whether Defendants engaged in a combination or conspiracy with their co-conspirators to rig bids and/or allocate the market for the purchase of leasehold interests and producing properties;

    b.    Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, or depress the price of leasehold interests and producing properties;

    c.    Whether Defendants violated Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

    d.    Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees,

---

[6] "Defendants" as used in the class definition include any predecessor, subsidiary, agents (such as landmen), or affiliate of Defendants.

or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

e.  Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Class, and, if so, the appropriate measure of damages; and

f.  Whether Plaintiff and members of the Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act.

27.    Plaintiff's claims are typical of the claims of the members of the Class.

28.    Plaintiff will fairly and adequately assert and protect the interests of the Class Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

29.    Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

30.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

31.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.  The Class is readily definable and one for which records should exist in the files of Defendants.

b.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

d.  Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

32.     This class action presents no difficulties of management that would preclude its maintenance as a class action.

## TOLLING OF THE STATUTE OF LIMITATIONS

33.     Plaintiff had neither actual nor constructive knowledge of the facts constituting its claim for relief.

34.     Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until at or about March 1, 2016, the date on which the indictment of Mr. McClendon and the unnamed co-conspirators became public.

35.     Defendants engaged in a secret conspiracy that did not reveal facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy to fix prices for leasehold interests and producing properties.

36.     Accordingly, Plaintiff could not have had either actual or constructive knowledge of the price fixing scheme until Mr. McClendon and the unnamed co-conspirators indictment became public.

37.     Because Defendants' agreement, understanding and conspiracy was kept secret, Plaintiff and members of the Class were unaware of Defendants' unlawful conduct alleged herein and did not know that the prices for which they sold their leasehold interests or producing properties were artificially depressed during the Class Period.

## COUNT I

### Violation of Section 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3)

38.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

39.     Defendants and their co-conspirators engaged in a continuing combination and conspiracy to rig bids and unlawfully depress the prices of leasehold interests and producing properties within the United States, its territories, and the District of Columbia in violation of Section 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

40.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by bid rigging and depressing the prices for leasehold interests and producing properties below competitive levels.

41.     In formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators engaged in bid rigging and other anticompetitive activities, the purpose and effect of which were to artificially depress the price of leasehold interests and producing properties.

42.     The illegal combination and conspiracy alleged herein had the following effects, among others:

    a.     The prices Defendants paid Plaintiff and members of the Class for leasehold interest and producing properties were artificially depressed below competitive levels;

    b.     Plaintiff and members of the Class have been deprived of free and open competition in sales of their leasehold interests and producing properties;

    c.     Plaintiff and members of the Class have sold their leasehold interests and producing properties for less than they would have had they sold in a competitive marketplace where Defendants' combination and conspiracy was absent;

    d.     Competition for the purchase of leasehold interests and producing properties have been restrained.

43.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have been injured and damaged in their business and property in an amount to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.  That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

B.  That the Court adjudge and decree that the contract, combination and conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act;

C.  That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Class;

D.  That the Court award Plaintiff and the Class treble damages;

E.  That the Court award Plaintiff and the Class attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law

F.  That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

G.  That the Court award Plaintiff and the Class such other and further relief as may be deemed necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all matters so triable.

Dated Thursday, March 03, 2016.

Respectfully submitted


s/ Douglas D. Wilguess
Douglas D. Wilguess, OBA No. 16337
Heather A. Garrett, OBA No. 19099
WILGUESS & GARRETT, PLLC
One Leadership Square
211 N. Robinson, Suite 1350
Oklahoma City, OK 73102
Telephone: (405) 235-0200
Facsimile: (405) 232-6515
wilguess@wgokc.com
garrett@wgokc.com


Warren T. Burns
(*Pro Hac Vice* to be filed)
TX State Bar No. 24053119
Daniel H. Charest
(*Pro Hac Vice* to be filed)
TX State Bar No. 24057803
Will Thompson
(*Pro Hac Vice* to be filed)
TX State Bar. No. 24094981
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com


Isaac Diel (*Pro Hac Vice* to be filed)
SHARP MCQUEEN PA
6900 College Boulevard Suite 285
Overland Park, Kansas 66211
Telephone: (913) 661-9931
idiel@sharpmcqueen.com

Terrell W. Oxford
(*Pro Hac Vice* to be filed)
SUSMAN GODFREY LLP
1000 Louisiana
Suite 5100
Houston, Texas 77002-5096
Tel:  (713) 651-9366
FAX:  (713) 654-6666
toxford@susmangodfrey.com

William C. Carmody
(*Pro Hac Vice* to be filed)
Arun Subramanian
(*Pro Hac Vice* to be filed)
SUSMAN GODFREY L.L.P.
560 Lexington Ave., 15 Floor
New York, NY 1002-6828
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com

Larry D. Lahman
Michael E. Kelly
Carol Hambrick Lahman
Mitchell DeClerck
MITCHELL DECLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Tel:  (800) 287-5144
FAX:  (580) 234-8890